**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**Case No.: 20-22051-CIV-GAYLES-OTAZO-REYES**

SISVEL INTERNATIONAL S.A., 3G
LICENSING S.A., and SISVEL S.p.A.,

        Plaintiffs,

v.

HMD AMERICA, INC. and HMD
GLOBAL OY,

        Defendants.

**DEFENDANTS HMD AMERICA, INC. AND HMD GLOBAL OY'S**
**MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW**
**AND MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

MEMORANDUM OF LAW ............................................................................................................ 1

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 2

III. LEGAL STANDARDS ........................................................................................................ 5

IV. ARGUMENT ........................................................................................................................ 6

    A. Sisvel Is A Non-Practicing Entity That Would Not Be Unduly Prejudiced By A Stay Or Be Placed At A Clear Tactical Disadvantage .............................................. 6

    B. A Stay Would Significantly Simplify The Issues ............................................................ 8

      1. The IPRs Will Likely Invalidate All Or Most Of The Asserted Patents ...................... 8

      2. The IPRs Will Likely Significantly Simplify The Issues And Reduce The Scope Of This Case ........................................................................................................................ 9

    C. This Case Is At An Early Stage, And A Stay Would Be Appropriate At This Time..... 11

    D. The Totality Of Circumstances Favors A Stay ............................................................... 12

V. CONCLUSION................................................................................................................... 14

i

## **TABLE OF AUTHORITIES**

*Intell. Ventures I, LLC v. Motorola Mobility LLC*,
   Case No. 1-61358-CIV, 2014 WL 12584301 (S.D. Fla. July 17, 2014) .................... 6, 9, 10, 11

*Prisua Eng'g Corp. v. Samsung Elecs. Co.*,
   472 F. Supp. 3d 1183 (S.D. Fla. 2020) ........................................................................... 6, 7, 11

*Rothschild Storage Retrieval Innovations LLC v Motorola Mobility LLC*,
   Civil Action No. 14-22659, 2015 WL 12715618 (S.D. Fla. May 11, 2015) ................... passim

*Targus Int'l LLC v. Group III Int'l, Inc.*,
   Civil Action No. 20-21435, 2021 WL 542675 (S.D. Fla. Jan. 8, 2021) .......................... passim

**STATUTES**

35 U.S.C. § 314 ................................................................................................................................ 3

35 U.S.C. § 315(e)(2) ..................................................................................................................... 11

35 U.S.C. § 316(a)(11) ..................................................................................................................... 5

Defendants HMD America, Inc., and HMD Global Oy ("HMD"), by and through counsel, pursuant to Local Rule 7.1, respectfully move this Court to stay this action in view of *inter partes* review petitions challenging the validity of all nine asserted patents in this case

## MEMORANDUM OF LAW

### I. INTRODUCTION

This action should be stayed because *inter partes* reviews ("IPRs") before the U.S. Patent and Trademark Office are likely to invalidate all or most of the nine asserted patents. At a minimum, the IPRs will significantly narrow the issues and scope of discovery and trial in this case. The parties and the Court should not waste their resources in litigating patents that are likely to be invalidated in the IPRs.

A stay would not unduly prejudice Plaintiffs ("Sisvel") or put them at a clear tactical disadvantage. Sisvel is a non-practicing entity whose business is to monetize its patents. The remedy for any patent infringement in this case would be monetary damages, which is the only remedy expressly sought by Sisvel. A stay would not diminish Sisvel's ability to recover damages, and pre-judgment interest would account for any delay. A stay would simplify the issues and scope of the case for trial. HMD expects that all or most of the Sisvel patents asserted here will be invalidated by the IPRs. Even if fewer than all asserted patents are invalidated, that would significantly reduce the scope of the case. A stay would be appropriate at this time because the present case is at an early stage. No fact depositions have been taken, document discovery is still in process, and deadlines for expert discovery and trial are subject to planned modification. A stay would be especially appropriate now, before the parties and Special Master for claim construction invest significant time for the *Markman* hearing and subsequent report and recommendation of the Special Master. Furthermore, a stay in view of the IPRs would have less impact on this case than under ordinary circumstances because a significant enlargement of the schedule is already necessary to accommodate (1) the Special Master for claim construction (as addressed at the Court's previous hearings), and (2) the pending discovery from the European Telecommunications Standards Institute sought through a letter of request pursuant to the Hague Convention.

1

**II.     BACKGROUND**

Plaintiffs are non-practicing entities that do not manufacture or commercialize any products. Their business is to try to monetize patents. Sisvel and its affiliates have filed nearly 50 patent lawsuits in U.S. District Courts.

HMD Global Oy owns the rights to make and sell mobile phones under the famous Nokia brand. HMD America distributes Nokia phones in the U.S.

The present action is part of a large litigation campaign in which Sisvel has asserted many patents against many defendants in two groups of lawsuits referred to here as the "Sisvel 1" and "Sisvel 2" actions. The present lawsuit against HMD is one of the Sisvel 2 actions.[1]

The patents asserted in the Sisvel 1 and Sisvel 2 actions are of low technical merit and value. Sisvel's patent portfolio includes many patents discarded by the original owners and acquired in bulk by Sisvel, like those asserted here. It is common practice for companies that develop large patent portfolios to sell off their less valuable patents over time. A major reason for this practice is that a patent owner must pay maintenance fees several times after a patent issues to keep it in force. Each maintenance fee is thousands of dollars per patent,[2] and these fees can become onerous for companies that own many patents. As a result, companies with large patent portfolios often review their patents over time to identify patents that are valuable and warrant paying maintenance fees and, conversely, to identify patents that are not valuable enough to warrant paying maintenance fees. Companies often sell off such low value patents in bulk to patent aggregators like Sisvel. The Sisvel 1 and Sisvel 2 patents are examples of such low value patents.

Beginning in June 2019, Sisvel selected a first group of 12 patents that were originally developed and owned by Nokia and Blackberry and filed a group of 11 lawsuits that comprise the Sisvel 1 cases. *See* Appendix 1. Sisvel contends that the Sisvel 1 patents are "essential" to various aspects of the 2G, 3G, and 4G telecommunications standards. According to Sisvel, complying

---

[1] For the Court's reference, Appendix 1 lists (a) the Sisvel 1 cases, (b) the IPRs for the Sisvel 1 patents, (c) the Sisvel 2 cases, and (d) the IPRs for the Sisvel 2 patents.
[2] The USPTO's patent maintenance fee schedule is available at https://www.uspto.gov/learning-and-resources/fees-and-payment/uspto-fee-schedule#Patent%20Maintenance%20Fee.

2

with these standards requires practicing the claims of the Sisvel 1 patents. The 2G, 3G, and 4G standards are issued by the European Telecommunications Standards Institute ("ETSI").

Some of the Sisvel 1 defendants filed IPR petitions at the U.S. Patent and Trademark Office ("USPTO") that challenge the validity of the patents. *See* Appendix 1. Recently, the USPTO instituted trial for IPRs for 11 of 12 of the patents asserted in the Sisvel 1 cases, finding "there is a reasonable likelihood that the petitioner[s] would prevail [on invalidity] with respect to at least 1 of the claims challenged in the petition[s]" under 35 U.S.C. § 314. These IPRs challenge the validity of 65 of 66 of the asserted patent claims in the Sisvel 1 cases.

Facing the prospect that the USPTO is likely to find 11 of 12 of the asserted patents in the Sisvel 1 cases to be invalid, Sisvel stipulated to a stay for six of the Sisvel 1 cases pending in Delaware and the Northern District of Texas. The defendants in the other Sisvel 1 cases have either settled or have agreed not to contest validity.

In May 2020, Sisvel selected a second group of nine patents that were originally developed by Nokia, Blackberry, and LG Electronics and filed a group of 13 lawsuits that comprise the Sisvel 2 cases. *See* Appendix 1. The present lawsuit against HMD is one of the Sisvel 2 cases. Sisvel originally filed this action against HMD on May 15, 2020, but waited until July 9, 2020, before attempting to serve the complaint on HMD. ECF No. 6. HMD is not a party to any Sisvel 1 case, but many of the defendants in the Sisvel 1 cases were also sued in the Sisvel 2 cases.

The present action is the first of the Sisvel 2 cases to begin claim construction proceedings. No other court has considered the meaning of the disputed claim terms of the asserted patents in this case.

The Sisvel 2 actions are large and complex because the nine asserted patents are unrelated to each other and concern different aspects of cellular communications technology. The nine asserted patents in the Sisvel 2 cases are listed below:

| Asserted U.S. Patent Number | Title | Current & Original Assignee |
|---|---|---|
| 7,979,070 ("the '070 patent") | Mobile equipment for sending an attach request to a network | Sisvel Int'l S.A. Nokia |
| 8,189,611 ("the '611 patent") | System and method for resolving contention among applications requiring data connections between a mobile communications device and a wireless network | 3G Licensing S.A. BlackBerry |
| 8,600,383 ("the '383 patent") | Apparatus and method for making measurements in mobile telecommunications system user equipment | 3G Licensing S.A. BlackBerry |
| 7,215,653 ("the '653 patent") | Controlling data transmission rate on the reverse link for each mobile station in a dedicated manner | 3G Licensing S.A. LG Electronics |
| 7,869,396 ("the '396 patent") | Data transmission method and data re-transmission method | Sisvel S.p.A. LG Electronics |
| 8,971,279 ("the '279 patent") | Method and apparatus for indicating deactivation of semi-persistent scheduling | Sisvel S.p.A. LG Electronics |
| 7,319,718 ("the '718 patent") | CQI coding method for HS-DPCCH | 3G Licensing S.A. LG Electronics |
| 7,551,625 ("the '625 patent") | Method of scheduling an uplink packet transmission channel in a mobile communication system | 3G Licensing S.A. LG Electronics |
| 7,580,388 ("the '388 patent") | Method and apparatus for providing enhanced messages on common control channel in wireless communication system | 3G Licensing S.A. LG Electronics |

Sisvel asserts that the Sisvel 2 patents are essential to various aspects of the 3G and 4G telecommunications standards. HMD contends that the nine asserted patents are not infringed and/or are invalid. HMD further contends that, to the extent the asserted patents are essential, Sisvel and/or the original owners of the patents breached their promises to ETSI (the standards

4

setting organization) and their members to license the patents on Fair Reasonable and Non-Discriminatory ("FRAND") terms.[3]

Some of the defendants in the Sisvel 2 cases filed IPR petitions against all nine asserted patents, including all 29 patent claims asserted against HMD. *See* Appendix 1. The first petition was filed on March 4, 2021, and the last petition was filed on June 17, 2021. *See* Appendix 1. Institution decisions by the USPTO are expected in September 2021 through November 2021. The USPTO must normally issue final written decisions within one year of the time the USPTO notices institution of IPRs. 35 U.S.C. § 316(a)(11).

On June 21, 2021, in the Sisvel 2 case against ZTE, the Northern District of Texas denied without prejudice ZTE's motion to stay its case prior to an institution decision in the IPRs, although that case has since been stayed for settlement discussions. *Sisvel International SA v. ZTE (USA), Inc.*, No. 20-cv-1289 (N.D. Tex.), ECF Nos. 43, 47.

More recently, on July 9, 2021, the District of Delaware stayed six pending Sisvel 2 cases in view of the substantial overlap between Sisvel's patents and issues in both the Sisvel 1 and 2 cases—before any institution decisions have been reached. *See Sisvel International SA v. Dell Inc.*, No. 20-cv-649 (D. Del. July 9, 2021). The Delaware court stayed the Sisvel 2 cases against six defendants, including Xirgo and Verifone, which like HMD are not parties to the IPR proceedings, and TCL and Wiko, which like HMD are not parties to the Sisvel 1 cases.

## III. LEGAL STANDARDS

"Courts generally enjoy broad discretion in deciding how best to manage the cases before it." *Targus Int'l LLC v. Group III Int'l, Inc.*, Civil Action No. 20-21435, 2021 WL 542675, at *1 (S.D. Fla. Jan. 8, 2021) (citing *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F. 3d 1234, 1269 (11th Cir. 2001)). This principle soundly applies when a stay of litigation is sought pending an administrative proceeding to challenge the validity of a patent before the patent office. *Id.* ("[T]he

---

[3] A patent holder's commitment to license its patents on FRAND terms is the *quid pro quo* for adoption of the patent holder's technology into the standard. Otherwise, patent holders could extract monopoly prices for technology mandated for standards-compliance.

decision to stay related civil patent infringement litigation is within the sound discretion of the district court.") (citation omitted).

"Courts recognize a 'liberal policy in favor of granting stays pending reexamination of the validity of patent claims.'" *Rothschild Storage Retrieval Innovations LLC v Motorola Mobility LLC*, Civil Action No. 14-22659, 2015 WL 12715618, at *1 (S.D. Fla. May 11, 2015) (citation omitted). "Stays pending IPR are routinely granted 'in order to avoid inconsistent results, obtain guidance from the PTAB, or avoid needless waste of judicial resources.'" *Id.* (citation omitted).

In determining whether a stay pending IPR is appropriate, Courts consider "(1) whether the stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether the stay will simplify issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Targus*, 2021 WL 542675, at *2. Courts also "consider whether the totality of the circumstances and the interests of justice favor a stay." *Prisua Eng'g Corp. v. Samsung Elecs. Co.*, 472 F. Supp. 3d 1183, 1186 (S.D. Fla. 2020).

## IV.     ARGUMENT

In this case, all three factors that the Court should consider and the totality of circumstances favor a stay.

### A.     Sisvel Is A Non-Practicing Entity That Would Not Be Unduly Prejudiced By A Stay Or Be Placed At A Clear Tactical Disadvantage

A stay would not unduly prejudice or present a clear tactical disadvantage to Sisvel. Sisvel is a non-practicing entity. A stay will not unduly prejudice Sisvel because it does not sell products, use the technology in its patents, or compete with HMD. *Intell. Ventures I, LLC v. Motorola Mobility LLC*, Case No. 1-61358-CIV, 2014 WL 12584301, at *2 (S.D. Fla. July 17, 2014) ("[T]he stay will not unduly prejudice Plaintiffs, who are non-practicing entities not seeking an injunction."); *see also Prisua Eng'g Corp.*, 472 F. Supp. 3d at 1186 ("[A] stay is unlikely to materially prejudice Plaintiff because Plaintiff and Defendants are not direct competitors …."). Sisvel is not seeking an injunction (*see* Complaint), so this is not a case where a competitor faces prejudice because it is forced to compete with a potential infringer during the period of stay. *Cf.*

6

*Targus*, 2021 WL 542675, at *2 (acknowledging that "courts often recognize" that direct competitors face prejudice during the period of stay.) The same remedies that are available to Sisvel now will also be available to Sisvel after a stay, including monetary damages and pre-judgment interest. *Rothschild*, 2015 WL 12715618, at *2 (holding first factor favored stay because plaintiff "will have the same remedies available to it that it does now—namely monetary damages and pre-judgment interest for the action's pendency."); *see also Targus*, 2021 WL 542675, at *2 ("Targus has not sought a preliminary injunction and, thus, any further harm occasioned by the stay may be ameliorated by monetary damages.")

Sisvel cannot show that it will be unduly prejudiced or suffer tactical disadvantage because a "delay in the litigation does not establish undue prejudice." *Prisua Eng'g Corp.*, 472 F. Supp. 3d at 1186; *Targus*, 2021 WL 542675, at *2 ("[S]tanding alone, the potential for litigation delay does not establish undue prejudice.") (citation omitted). Sisvel should not be heard to complain about delay because it waited a significant time after acquiring some of the asserted patents before asserting them against HMD. Sisvel acquired the asserted patent formerly owned by Nokia in April 2012—eight years before suing HMD in May 2020. Sisvel acquired the two asserted patents formerly owned by Blackberry in April 2019—one year before suing HMD. Sisvel acquired the six asserted patents formerly owned by LG Electronics in September 2019 and February 2020. ECF No. 1 at ¶¶ 26, 27. After filing the complaint in this action, Sisvel waited another two months before serving HMD.

Any delay to this litigation from a stay in view of the IPRs would extend through the one-year period in which the IPR trials will occur and the USPTO will issue its final written decisions (plus possible appellate review). Such limited delay is outweighed by the many benefits offered by the cost-effective and efficient patent office IPR procedure. In *Targus*, Judge Scola stayed a patent lawsuit, finding that the delay due to a stay pending IPR is outweighed by the potential advantages of the IPR:

> The Court finds, in this case, such a delay is outweighed by the many recognized potential advantages of *inter partes* review: "(1) furthering judicial economy; (2) determining validity;

7

> (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties."

2021 WL 542675, at *2 (citation omitted).

### B. A Stay Would Significantly Simplify The Issues

A stay would significantly simplify the issues in question and trial in this case because the IPRs for the Sisvel 2 patents are likely to invalidate all or most of the asserted patents. The circumstances show that the USPTO is likely to institute IPR trials and find that all or nearly all of the Sisvel 2 patents are invalid. Even if only some IPR trials are instituted, this Court will benefit from the focused and skilled analysis that the USPTO would provide concerning the patents, claims, and prior art.

#### 1. The IPRs Will Likely Invalidate All Or Most Of The Asserted Patents

The USPTO instituted trial for 11 of 12 Sisvel 1 patents, finding a reasonable likelihood that at least one claim of those 11 patents is invalid. Sixty five of 66 patent claims asserted by Sisvel are now subject to invalidation by the very office that granted them. The fact that the USPTO instituted IPR trials for 65 of 66 of Sisvel's asserted patent claims is reflective of the low technical merit and value of Sisvel's patents. All or the vast majority of these claims are likely to be invalidated. The USPTO statistics for fiscal years 2019 and 2020, following institution, 70 percent and 73 percent, respectively, of challenged claims that were addressed in a final written decision were found invalid. Declaration of Gene Lee ("Lee Declaration") Exhibit 1 at 23,[4]

---

[4] Exhibit 1 is the Appendix for the USPTO Patent Trial and Appeal Board's (PTAB's) trial statistics for fiscal year 2020. Slide 23 shows PTAB trial outcomes for fiscal year 2019. 20,247 patent claims were challenged in petitions (nearly all IPRs), of which 11,038 were instituted for trial. Of the claims for which trial was instituted, 7,185 were the subject of a final written decision, of which 5,045 were found to be unpatentable (i.e., invalid)—*an invalidation rate of 70 percent*. Of claims for which trial was instituted, 3,350 were not subject to a final written decision, mostly because the trial settlement (3,350 claims were "No FWD" in slide 23).

Exhibit 2 at 15.[5] Sisvel apparently expects that all or nearly all of the Sisvel 1 patents will be invalidated because Sisvel stipulated to a stay of the Sisvel 1 cases.

The Sisvel 2 patents are similarly of low value and technical merit, and the IPRs will likely invalidate all or nearly all of the Sisvel 2 patents. The Sisvel 1 and Sisvel 2 patents all relate to cellular communications technology, and Sisvel asserts that they are essential to the 3G and 4G communications standards. Like the Sisvel 1 patents, the Sisvel 2 patents were discarded by their original owners and acquired in bulk by Sisvel. In fact, three of the Sisvel 2 patents were acquired from Nokia and Blackberry as part of the same portfolios in which Sisvel acquired the Sisvel 1 patents, and the USPTO's subsequent treatment of those portfolios is instructive. IPR trials have been already instituted on four of the patents in the Nokia portfolio by which Sisvel acquired the '070 Patent, and on seven of the patents in the Blackberry portfolio by which Sisvel acquired the '611 and '383 patents.

### 2. The IPRs Will Likely Significantly Simplify The Issues And Reduce The Scope Of This Case

If the IPRs invalidate all of the Sisvel 2 patents, this case would end. *Rothschild*, 2015 WL 12715618, at *1 ("[T]his case may become moot if the Patent Board invalidates the asserted claims."); *Intell. Ventures I*, 2014 WL 12584301, at *2 ("[I]f the parties continue to litigate validity issues before this Court, and the PTO subsequently finds that some or all of the claim at issue here are invalid, much time and resource will have been wasted by the Court and the Parties.") Even if the IPRs invalidate fewer than all patents or claims, they would significantly simplify the issues and reduce the scope of this case for discovery and trial. *Rothschild*, 2015 WL 12715618, at *2 ("Even if only some of the claims are canceled by the PTAB, those claims will not need to be

---

[5] Exhibit 2 is the USPTO PTAB's trial statistics for fiscal year 2020. Slides 15-16 shows PTAB trial outcomes for fiscal year 2020 in a different format than slide 23 of Exhibit 1. 18,019 patent claims were challenged in petitions (nearly all IPRs), of which 9,663 were instituted for trial. Of the claims for which trial was instituted, 6,977 (1,852 + 5,125) were the subject of a final written decision, of which 5,125 were found to be unpatentable (i.e., invalid)—***an invalidation rate of 73 percent***. Of claims for which trial was instituted, 3,350 were not subject to a final written decision, mostly because the trial settlement (2,136 claims were "No FWD" in slide 16).

9

addressed in this action, and thus save the Parties from spending time conducting discovery, researching, and briefing the issues."); *Targus*, 2021 WL 542675, at *2 (holding second factor favored stay where "any streamlining of the issues or invalidated issues will save judicial resources.").

This is a large and complex patent litigation involving nine asserted patents and 29 asserted claims that will require litigation of a wide range of facts and issues concerning claim construction, noninfringement, and invalidity. For example, each asserted patent involves a distinct set of prior art that is different from the prior art for the other patents. Even if just a few asserted patents are invalidated by the IPRs, this case will be simplified because claim construction, fact discovery, and expert discovery would be mooted for each patent that is invalidated.

A stay would also simplify the issues because the IPRs "will become part of the intrinsic record of the [] patents at issue." *Intell. Ventures I*, 2014 WL 12584301, at *2. Sisvel will likely take positions in the IPRs that will inform this Court's analyses—as it has already done. As one clear example, in its pre-institution filings, Sisvel requested that the USPTO construe the term "Enhanced Absolute Grant Channel" in order to avoid prior art; while Sisvel did not request any construction of that term before this Court, Sisvel's statement is now a part of the patent's intrinsic record, and may necessitate consideration by this Court. Lee Declaration Ex. 3 ('625 patent owner response). A stay pending IPR would allow Sisvel's positions regarding the scope of its patents to become clear and allow the USPTO to consider those statements on their merits. Most importantly, it would allow HMD to exercise its right to defend itself in view of *all* of Sisvel's statements about its patents, not only those it makes to this Court.[6]

---

[6] A party who requests an IPR that results in a final written decision from the USPTO is estopped from raising invalidity defenses that were "raised or reasonably could have [been] raised during that inter partes review." 35 U.S.C. § 315(e)(2). HMD is not a party to the IPR proceedings against Sisvel's patents so this estoppel does not apply to HMD. Even so, the IPR proceedings will significantly narrow the issues before this Court. Further, were the Court to conclude that it would benefit the Court for HMD to be estopped as though it were a party to the IPR proceedings, HMD would consent to that estoppel in the interest of staying the case.

10

### C. This Case Is At An Early Stage, And A Stay Would Be Appropriate At This Time

The third factor also favors stay because the case is in its early stages. There have been no fact depositions, no substantive claim construction hearing or rulings, no expert reports or depositions (other than for claim construction), and no dispositive motions. *Intell. Ventures I, LLC*, 2014 WL 12584301, at *2 (case in its early stages where the "Court has not yet held claim construction hearing" and "[f]act discovery has not yet completed, expert discovery has not yet commenced, and dispositive motions have not yet been filed."); *Rothschild*, 2015 WL 12715618, at *2 (same). Judge Noreika identified the similar posture of the Delaware Sisvel 2 cases as supportive of her decision to stay those cases.

Courts have found that a stay is appropriate even as to cases farther along than this one. *Prisua Eng'g Corp.*, 472 F. Supp. 3d at 1186 (finding factor weighed "slightly in favor of ... the stay" despite jury verdict finding claims valid because of the risk of inconsistent ruling from the USPTO). For example, in *Prisua*, the Court found this factor weighed in favor of stay *after* a jury verdict found the patents valid. A stay would avoid inconsistent results between this Court's rulings of invalidity at the summary judgment stage or a jury verdict of invalidity and the USPTO's decision. *Id.*

Here, not only is the case in its early stages, but a significant modification to the schedule is already necessary for several reasons. Therefore, a stay would have less impact on this case than if a significant modification to the schedule were not necessary.

First, by agreement of the parties, claim construction will be referred to a Special Master. The parties have identified proposed candidates, and the Court is expected to appoint a Special Mater this week, by July 22, 2021. Following appointment, the Special Master will need time to study the existing record, hold an oral argument, and issue a report and recommendation. The parties previously raised with the Court the need to modify the schedule accordingly.

Staying the case now is especially appropriate—before the Special Master and the parties devote significant time and effort to the remaining claim construction activities, including the Special Master's report and recommendation and possible subsequent motion practice. Such work

11

could be rendered moot if the asserted patents are invalidated by the IPRs. Furthermore, a stay would allow the Special Master the benefit of the USPTO's specialized insight into the claim terms and scope from the IPRs.

Second, this case will involve significant foreign discovery, including document and depositions, because the parties themselves and many third parties with relevant information are foreign. In April 2021, HMD moved for foreign discovery from ETSI pursuant to the Hague Convention. ECF No. 83. On May 21, 2021, the French Ministry of Justice authorized the request but forwarded the matter to the provincial court, the First Instance Court of Grasse, for execution. ECF No. 100. Discovery from ETSI is critical because Sisvel's infringement theories are based on the contention that the asserted patents are essential to the 3G and 4G standards and because prior art that invalidates some patents comes from ETSI. Discovery from ETSI is necessary at least: (1) to show how the standards alleged to be infringed in this case were developed; (2) to determine whether there are any patent rights associated with those standards and the FRAND obligations associated with such patent rights; (3) to determine whether ETSI has relevant prior art of which HMD is not currently aware; (4) to authenticate and establish the public availability of prior art that HMD has already discovered in this case. Furthermore, discovery might be necessary from Nokia, Blackberry, and LG Electronics, the companies that originally developed and owned the asserted patents. Sisvel's initial disclosures further identify 22 foreign third-party individuals with knowledge concerning the origins of the purported inventions, the prosecution of the patents before the USPTO, and prior art. Lee Declaration Ex. 4.

### D. The Totality Of Circumstances Favors A Stay

Although "courts often deny stays when they are sought *before* the PTAB [USPTO] has decided to institute review, this is not [a] bright-line rule." *Targus*, 2021 WL 542675, at *1 (staying one-patent case prior to institution decision). In *Targus*, after considering each of the relevant factors Judge Scola stayed the case prior to the USPTO's institution decision. However, that case involved only one patent. This case presents even greater benefit to staying prior to institution because there is more likelihood that at least some of the petitions will be instituted. In

the Sisvel 1 cases, the patent offices instituted review of 65 of 66 challenged claims. Here, the patent office is likely to institute review of many challenged claims given the similarities to the patents in the Sisvel 1 cases.

The optimal time to stay the case is now. Institution decisions are not expected until September at the earliest and the final institution decision is not expected until November. If the Court were to wait for institution decisions in the IPRs before staying this case, a significant portion of the benefits of the stay will be missed. The Special Master would carry out claim construction activities on patents that are likely to be found invalid. The parties will spend time and resources conducting fact discovery (including foreign discovery) and expert discovery on issues that may be mooted by the IPR proceedings.

In sum, the parties and the Court should not be forced to waste more resources litigating patents that the patent office may find invalid. Congress itself envisioned that IPR proceedings would serve as a cost-effective and efficient method to weed out invalid patents like the ones Sisvel asserts here. IPR proceedings are an alternative to more costly district court litigation that can greatly simplify the issues and cull large patent litigations such as this one.

## V.      CONCLUSION

For all of the above reasons, the Court should stay the litigation pending IPR proceedings challenging the validity of every asserted patent in this case.

## VI.     LOCAL RULE 7.1 CERTIFICATION

Counsel for HMD has conferred with counsel for Sisvel about the relief sought in this Motion in a good faith effort to resolve the issues raised in the Motion and has been unable to do so.

Dated: July 20, 2021 Respectfully submitted,

| | |
|---|---|
| WILLIAM J. MCCABE, ESQ.<br>*Pro hac vice*<br>wmccabe@perkinscoie.com<br>GENE W. LEE, ESQ.<br>*Pro hac vice*<br>glee@perkinscoie.com<br>MATTHEW J. MOFFA, ESQ.<br>*Pro hac vice*<br>mmoffa@perkinscoie.com<br>**PERKINS COIE LLP**<br>1155 Avenue of the Americas, 22nd floor<br>New York, NY 10036<br>Telephone: (212) 262-6900<br>Facsimile: (212) 977-1649 | */s/ Joseph W. Bain*<br>JOSEPH W. BAIN, ESQ.<br>Florida Bar No. 860360<br>Email Address: jbain@shutts.com<br>**SHUTTS & BOWEN LLP**<br>1100 CityPlace Tower<br>525 Okeechobee Boulevard<br>West Palm Beach, Florida 33401<br>Telephone: (561) 835-8500<br>Facsimile: (561) 650-8530<br><br>**ATTORNEYS FOR DEFENDANTS<br>HMD AMERICA, INC., AND<br>HMD GLOBAL OY** |

SHYAMKRISHNA PALAIYANUR, ESQ.
*Pro hac vice*
spalaiyanur@perkinscoie.com
**PERKINS COIE LLP**
500 W. 2nd St.
Suite 1900
Austin, TX 78701
Telephone: (737) 256-6100
Facsimile: (737) 256-6300

MICHAEL A. CHAJON, ESQ.
*Pro hac vice*
mchajon@perkinscoie.com
**PERKINS COIE LLP**
700 Thirteenth Street N.W., Suite 800
Washington, D.C. 20005
Telephone: (202) 654-3316
Facsimile: (202) 624-9575

ADAM G. HESTER, ESQ.
*Pro hac vice*
ahester@perkinscoie.com
**PERKINS COIE LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4311
Facsimile: (650) 838-4350

**ATTORNEYS FOR DEFENDANTS
HMD AMERICA, INC., AND
HMD GLOBAL OY**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of July, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which served a copy on the following:

Francesca Russo-Di Staulo, Esq.
Robert Ralph Jimenez, Esq.
Jorge Tadeo Espinosa, Esq.
GrayRobinson, P.A.
333 S.E. 2nd Avenue, Suite 3200
Miami, FL 33131
Telephone: 305-416-6880
Fax: 305-416-6887
Email: francesca.russo@gray-robinson.com
Email: robert.jimenez@gray-robinson.com
Email: jorge.espinosa@gray-robinson.com

Neil Benchell, Esq.
*Pro hac vice*
Stephanie Berger, Esq.
*Pro hac vice*
Timothy Devlin
*Pro hac vice*
Devlin Law Firm, LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Email: nbenchell@devlinlawfirm.com
Email: sberger@devlinlawfirm.com
Email: tdevlin@devlinlawfirm.com
Email: dlflitparas@devlinlawfirm.com

**Attorneys for** *Plaintiffs, Sisvel International S.A., 3g Licensing S.A., and Sisvel S.p.A.*

By:     */s/ Joseph W. Bain*
               Joseph W. Bain
               Florida Bar No. 860360
               jbain@shutts.com