**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Civil Action No. 1:20-cv-22051-GAYLES/OTAZO-REYES**

SISVEL INTERNATIONAL S.A.,
3G LICENSING S.A., and SISVEL S.p.A.,

          Plaintiffs,

    v.

HMD AMERICA, INC.,
and HMD GLOBAL OY,

          Defendants.

**FILED UNDER SEAL**

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SANCTIONS**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

  A.   Sisvel's Production Prior to April 20, 2021 .......................................................... 2

  B.   The April 20, 2021 Discovery Hearing and Order ................................................ 3

  C.   Sisvel's May 2021 Production ............................................................................... 6

  D.   Sisvel's August 2021 Production ........................................................................... 7

III.    LEGAL STANDARDS ............................................................................................ 8

IV.     ARGUMENT ............................................................................................................ 9

  A.   Sanctions Are Unwarranted Here Because Sisvel Substantially Complied with the Court's
  Order ........................................................................................................................... 9

    1.   Despite Challenges Sisvel Noted on the Record, Sisvel's May 2021 Production Was
    Only Slightly Delayed, and Sisvel Promptly Notified HMD of the Delay Before It Occurred
    ................................................................................................................................ 9

    2.   Sisvel's Amended Objections and Responses to HMD's Third Set of RFPs in May 2021
    Complied with the Order ....................................................................................... 10

  B.   Documents Produced in August Were Either Outside the Scope of the Order or Any Delay
  Was Substantially Justified, and the Circumstances Weigh Against Awarding Sanctions ...... 11

    1.   Supplemental Information on Payments That Sisvel Received ███████ Was
    Outside of the Court's Order ................................................................................. 11

    2.   Sisvel Produced Balance Sheets for "Appropriate" Years in May 2021 and Later
    Produced Additional Balance Sheets as Requested ............................................. 13

    3.   Two NDA Drafts Produced in May 2021 Were Inadvertently Omitted from That
    Production ............................................................................................................. 14

    4.   Proof of Payment to ███████████████████ in August 2021 Was
    Inadvertently Omitted from the May Production .................................................. 14

    5.   HMD Suffered No Prejudice from Inadvertent Failure to Produce Draft NDAs and
    Proof of Payment in May 2021 ............................................................................ 16

V.      CONCLUSION ...................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Braman Motors v. BMW of N. Am., LLC*,
  No. 17-CIV-23360-GAYLES/OTAZO-REYES,
  2021 U.S. Dist. LEXIS 121702 (S.D. Fla. Apr. 24, 2021)........................................................ 8

*McBride v. Walmart Stores E., L.P.*,
  No. 18-25072-Civ-SCOLA/TORRES,
  2020 U.S. Dist. LEXIS 87343 (S.D. Fla. May 15, 2020)................................................... 8, 9, 16

*PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*,
  No. 1:18-CIV-20818-GAYLES/OTAZO-REYES,
  2019 U.S. Dist. LEXIS 22872 (S.D. Fla. Feb. 11, 2019)................................................. 8, 9, 11

*Romero v. Diaz-Fox*,
  No. 18-CIV-21218-GAYLES/OTAZO-REYES,
  2020 U.S. Dist. LEXIS 222075 (S.D. Fla. Oct. 12, 2020) ....................................................... 8

*Sentry Ins. A Mut. Co. v. Brand Mgmt.*,
  295 F.R.D. 1 (E.D.N.Y. 2013) ................................................................................................ 16

**Rules**

Fed. R. Civ. P. 37...................................................................................................... 8, 9, 11

Pursuant to Local Rule 7.1, Plaintiffs Sisvel International S.A., 3G Licensing S.A. and Sisvel S.p.A. (collectively, "Sisvel") oppose Defendants HMD America, Inc. and HMD Global Oy's (collectively, "HMD") Motion for Sanctions (ECF No. 117) (the "Motion").  For the reasons set forth below, Sisvel respectfully asks that the Court deny the Motion.

## I.    INTRODUCTION

Once again, HMD attempts to manufacture an argument for sanctions against Sisvel. Once again, this Court should deny HMD's request.  HMD's arguments misrepresent the Court's discovery Order from April 20, 2021 (the "Order") and the factual record, and reveal that HMD failed to properly review the produced materials.

Sisvel diligently complied with the Order mandating that Sisvel produce documents responsive to certain of HMD's RFPs by May 17, 2021.  (*See* ECF. No. 78 at 1.)  In response to the Court's Order, Sisvel produced ███ individual documents comprising ████████ . Due to the volume of responsive documents and the fact that Sisvel was required to coordinate production with foreign entities, Sisvel's May 2021 production was slightly delayed by roughly one day.  HMD was on notice of the potential delay prior to the deadline and began receiving documents through Sisvel's document management vendor 34 minutes after the deadline, with the production being completed within approximately 29 hours.

In August 2021, Sisvel served HMD with a supplemental document production comprising 326 documents that fall into four categories: (1) supplemental information on payments that Sisvel received from █████████████████ that was *outside* the Order's scope; (2) balance sheets going back to 1999, which were *not* subject to the Order but which Sisvel produced upon HMD's request (after producing balance sheets for the appropriate years in its May 2021 production); (3) two draft NDA agreements that were inadvertently omitted from that production because of a mistaken privilege designation; and (4) invoices and

1

proof of payment demonstrating Sisvel's already-disclosed ███████████████████ ████████████ that were inadvertently omitted from the May 2021 production.  All of these documents were either outside the Court's Order but produced out of an abundance of caution to avoid burdening the Court with further frivolous motion practice by HMD, cumulative of information HMD already had in its possession, and/or of limited probative value to the core issues in this case.  Only a handful of these documents even arguably fall within the categories of documents addressed in the Order.

At this point, HMD has made its litigation strategy clear—identify *any* alleged deficiency (no matter how small or inconsequential to the litigation, or whether the deficiency actually exists) to serve as the basis of a request for sanctions.  Then ask the Court to impose sanctions frequently, even though HMD has suffered no demonstrable prejudice from Sisvel's good-faith actions.  This is an abuse of the discovery process and a waste of judicial resources, and HMD's Motion finds no support in controlling law or in the operative facts.

In short, HMD's Motion amounts to a request for sanctions because of a 29-hour delay in production in May and because of minor production oversights within a massive production of more than ████████.  None of Sisvel's oversights caused HMD any demonstrable prejudice, and Sisvel at all times acted reasonably and in good faith.  This is not the type of violation contemplated by Federal Rule of Civil Procedure 37(b)(2).  Therefore, sanctions against Sisvel are inappropriate.  For these reasons and reasons detailed below, the Motion should be denied.

## II.    BACKGROUND

### A.    Sisvel's Production Prior to April 20, 2021

Between mid-September 2020 and January 2021, HMD served three separate sets of RFPs totaling 80 requests.  (ECF No. 117-3, 117-4, 117-5 & 117-6.)  Sisvel began producing documents on November 11, 2020.  Despite Sisvel's best efforts to meet its discovery

obligations, HMD continuously demanded additional information, retroactively expanding the scope of its discovery requests.  (*See, e.g.*,  ECF No. 117-9 at 4 (HMD expanding RFP 43 to encompass third parties; ECF No. 43 at 1-2 (denying HMD's request for "a better answer" to Interrogatory 16 and narrowing HMD's discovery requests).)

On March 30, 2021, HMD filed a Notice of Hearing seeking leave to compel supplemental answers to Interrogatories 17, 18, and 20, and supplemental responses to HMD's Third Set of Requests for Production, specifically RFPs 24, 27, 29, 32, 34, 40, 54, and 76-79. (ECF No. 62 at 1.)  The Court scheduled a discovery hearing for April 20, 2021.  (ECF No. 68.)

Four days before the hearing, on April 16, 2021, HMD filed a Supplemental Notice of Hearing alleging additional deficiencies in Sisvel's production in response to 6-8, 10, 14-19, 37-39, 42, 44-48, 50, 51, 53, 55, 57, 58, 66-68, 70-74, and 80.  (ECF No. 73 at 1.)[1]  On the eve of the hearing, on April 19, 2021, HMD filed a Second Supplemental Notice of Hearing, withdrawing its challenge as to Interrogatory 17 and RFPs 76, 78, and 79.  (ECF No. 76 at 1-2 ("HMD is in the process of reviewing Sisvel's production of documents but believes that Sisvel's amended discovery responses and production resolve discovery disputes concerning interrogatory no. 17 and requests for production 76, 78, and 79.").)

**B.      The April 20, 2021 Discovery Hearing and Order**

The Court's April 20, 2021 hearing was limited to disputes over Interrogatories 18 and

---

[1] That notice contained a number of misrepresentations, including that Sisvel had agreed to produce documents responsive to particular RFPs, which Sisvel never agreed to do.  (*See* ECF No. 73 at 4.)  In fact, in at least one case, Sisvel promised to produce relevant and non-privileged documents "***during expert discovery***, to the extent any such documents exist and ***are required.***" (ECF No. 117-6 at 13.)  Similarly, another RFP was premature and no responsive documents were yet identified.  That RFP sought "[a]ll documents and things . . . that any Plaintiff intends to use or introduce at any trial, deposition, or hearing in this action."  (*Id.* at 23.)  Sisvel agreed to produce documents "at the appropriate time" given that the requests was largely prospective, given the stage of the case.  (*Id.* at 24.)  Another RFP sought documents provided to experts, which Sisvel again agreed to produce "at the appropriate time."  (*Id.* at 28.)

20, and RFPs 24, 27, 29, 32, 34, 40, 54, and 77.  The Court declined to address the additional

alleged deficiencies.  (*See* Ex. I, Discovery Hearing Transcript at 54:13-23 (Apr. 20, 2021)

("April Transcript")*;* ECF No. 76 at 1 n.1.)

Sisvel's production from November 2020 to April 16, 2021 totaled ██████████.  Of

these, ████████████████████ were designated "Highly Confidential—Attorneys' Eyes

Only."  Yet, at the April hearing HMD's counsel Mr. Moffa misrepresented to the Court that

Sisvel had produced only 37 documents.  (April Transcript at 35:7-10 ("Your Honor, just to be

clear, we have no correspondence produced in this case.  None at all.  In fact, as of two weeks

ago Sisvel had produced 37 documents in total.").)[2]

The Court denied-in-part and granted-in-part HMD's motion to compel.  Specifically, the

Court did not compel an amended answer to Interrogatories 18 and 20 (*see id.* at 17:19-23 &

19:21-23), and RFP 27 (*id.* at 29:5-30:3).  The Court granted narrowly tailored relief as to RFPs

24, 29, 32, 34, 40, 54, and 77 and ordered that Sisvel supplement its production as follows:

- RFP 24: produce documents relating to the asserted patents that were obtained from a

person holding an interest in the patents (*id.* at 23:6-22);

- RFP 29: produce foreign non-public litigation documents for "the asserted patents and the

patents that are referenced in the asserted patents" (*id.* at 32:2-3; *see also id.* at 30:4 to 32:19,

33:4-8, 33:22-34:5);

---

[2] HMD repeated this misrepresentation at the June 14, 2021 hearing.  (Ex. J, Transcript of
Telephonic Hearing Before the Hon. Alicia M. Otazo-Reyes at 4:5-8 (June 14, 2021) ("Shortly
before the April 20th hearing in which you issued your order, Sisvel has produced a mere 37
documents; that's six months after our first discovery requests and despite being the Plaintiffs in
the case."); *id.* at 14:20-24 ("Your Honor, had we asked for the fees at the time of the [April 20,
2021] hearing. The only record before Your Honor would have been the representations of the
Plaintiff that there were not responsive documents; that, you know, the 37 documents we had
received were the universe of relevant material.").)

- RFP 32 and 40: produce responsive non-privileged documents, if any exist, from exchanges with third parties (*id.* at 37:14-17 ("[T]he contention is that whatever goes to third parties or comes from third parties is not privileged. So you need to go back and see if you have any of those animals."); *id.* at 41:17-22);

- RFP 34: produce responsive non-privileged documents contemporaneously with the expert's report (*id.* at 40:20-21 ("For 34, you can produce those when you produce the expert's report.");

- RFP 54: produce a balance sheet only for "appropriate" years on the understanding that HMD can request additional balance sheets (*id.* at 46:24-47:4 ("I am going to only require a balance sheet for whatever years are appropriate, and that will give you their financial status. That should be sufficient for now. ***If you end up needing more, then you can ask for it***, but I leave that to, if you want financial status, a balance sheet is the best source for that."));[3] and

- RFP 77: produce proof of payment that Sisvel made to acquire the asserted patents (*id.* at 51:20-21 ("I will require supplementation of No. 77 with proof of payment.")).  Sisvel was also to continue production of the documents that it had already agreed to produce.  (*Id.* at 53:4-6.)

Conversely, during the hearing, the Court repeatedly rebuked HMD for taking unreasonable positions.  (*See, e.g.*, *id.* at 15:14-16 ("So you want the plaintiff to kind of second-guess the expert and give you whatever they are giving the expert regardless of what the expert is going to opine?"); *id.* at 18:2-4 ("They [HMD] just want to put the cart before the horse and get you to produce those before you give them to the expert."); *id.* at 19:17-20 ("I'm sorry. I'm sorry. Ownership of a vehicle is not in the same category as secondary considerations of non-obviousness. Ownership of a vehicle is a title. This is a much more obtuse issue."); *id.* at 38:5-7

---

[3] Unless otherwise indicated, all emphasis in this Brief has been added.

("Why do we keep beating this dead horse?").)  On the same day as the hearing, the Court issued

a written Order stating that documents other than those related to expert reports should be

produced on May 17, 2021.  (ECF No. 78 at 1.)

### C.      Sisvel's May 2021 Production

Sisvel had roughly a month to locate and produce documents in a variety of categories.  It

began preparing for production in compliance with the Court's Order promptly.  (Muus Decl. at

1-2.)  Sisvel's teams diligently gathered responsive documents, despite finding HMD's requests

overbroad.  (*See id.* at ¶ 2.)  Because of the over-inclusive nature of the RFPs, Sisvel had to

coordinate production ██████████ and investigate what steps needed to be taken to comply

with foreign jurisdictions for the production of non-public materials exchanged in foreign

litigations.  (*Id.* at ¶¶ 4-6.)

Overall, Sisvel produced ███████████████████████ as part of its May

2021 production.  Given the nature of these documents, ██ were required to be designated

"Highly Confidential—Attorneys' Eyes Only."  The extreme volume of production and the fact

that a significant portion of the materials was coming from abroad made meeting the May 17,

2021 deadline a challenge.

On May 17, 2021, Sisvel's outside counsel notified HMD counsel about a slight delay in

the production:

> Counsel,
> We will be producing a substantial number of documents tonight. There are a
> voluminous number of emails that we are required to produce.  This has
> considerably slowed our production processing.  In addition, we only received the
> nonpublic litigation documents from the European proceedings this afternoon, and
> those documents will be produced tomorrow.  Any documents that we have
> reviewed and prepared for production that are not produced this evening will be
> produced tomorrow.

(ECF No. 117-14.)

Sisvel began production before midnight on May 17, 2021.  At 12:34 AM on May 18, 2021, Sisvel's document management vendor began delivering documents to HMD, and continued to deliver batches of documents over the next 29 hours.  (ECF No. 117-15 at 2-4.) Sisvel also served the Amended Objections and Responses to HMD's Third Set of RFPs on May 21, 2021 in the manner agreed upon by both parties.  (*See* ECF No. 117-21 at 2.)

> **D.** **Sisvel's August 2021 Production**

In a letter from June 8, 2021, HMD's counsel Mr. Palaiyanur claimed to identify—after only an "initial review"—deficiencies in Sisvel's production responsive to RFPs 24, 29, 32, 34, 40, 54, 57, and 77.  (ECF No. 117-18 at 2.)  A follow-up letter on July 16, 2021 asserted additional alleged deficiencies in responses to RFPs 24, 32, 40, 76, and 78.  (ECF No. 117-20 at 2-3.)

Sisvel's counsel responded that Sisvel's production was not deficient, and directed HMD to multiple categories of documents that HMD claimed were missing from the May 2021 production.  (*Id.* at 1-4.)  Regarding RFPs 76, 77 and 78, Sisvel's counsel believed all documents had been produced and stated so to HMD, but also sought to confirm with Sisvel that all documents had been collected and produced.  (*Id.* at 4.)  Sisvel informed HMD that it would confirm the details and that certain updates might be forthcoming.

On August 5, 2021, HMD's counsel Mr. Moffa sent yet another letter to Sisvel's counsel, still asserting more limited purported deficiencies.  (*See generally* ECF No. 117-22.)  Despite Sisvel's letter from July 23, 2021 notifying HMD that certain updates may be forthcoming, Mr. Moffa declared that HMD's experts would render their opinions on the understanding that certain documents did not exist.  (*Id.* at 4-5.)

Between August 23 and 24, 2021, Sisvel produced █████████.  (ECF No. 117-23 at 1-2; ECF No. 117-24.)  Sisvel considered much of the production to be above and beyond what

the Court had ordered to be produced in May, and produced the materials to simply avoid having

to burden the Court with frivolous issues.  Sisvel's concurrent letter to HMD confirmed that it

considered all discovery challenges resolved.  (ECF No. 117-23 at 1-3.)

## III.   LEGAL STANDARDS

Rule 37 sanctions are imposed "to prevent unfair prejudice to the litigants" and "insure

the integrity of the discovery process."  *McBride v. Walmart Stores E., L.P.*, No. 18-25072-Civ-

SCOLA/TORRES, 2020 U.S. Dist. LEXIS 87343, at *5 (S.D. Fla. May 15, 2020), *R&R adopted*,

2020 U.S. Dist. LEXIS 98132, at *1 (June 3, 2020).  Courts have broad discretion to impose or

deny sanctions under Fed. R. Civ. P. 37(b).  *See, e.g.*, *Braman Motors v. BMW of N. Am., LLC*,

No. 17-CIV-23360-GAYLES/OTAZO-REYES, 2021 U.S. Dist. LEXIS 121702, at *25 (S.D.

Fla. Apr. 24, 2021) (denying motion for sanctions but ordering supplemental discovery).

When deciding whether to impose sanctions under Fed. R. Civ. P. 37(b), the court must

determine (1) whether a party "violated" a discovery order; and (2) if so, whether the violation

was substantially justified.  *See, e.g.*, *PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, No. 1:18-

CIV-20818-GAYLES/OTAZO-REYES, 2019 U.S. Dist. LEXIS 22872, at *28 (S.D. Fla. Feb.

11, 2019), *R&R adopted*, No. 18-20818-CIV, 2019 U.S. Dist. LEXIS 44735 (Mar. 19, 2019);

FED. R. CIV. P. 37(b)(2)(A) & (C).  "Substantially justified" means "that it was a genuine

dispute, or if reasonable people could differ as to the appropriateness of the contested action."

*Id.* at *27 (internal quotation marks omitted).  *See also Romero v. Diaz-Fox*, No. 18-CIV-21218-

GAYLES/OTAZO-REYES, 2020 U.S. Dist. LEXIS 222075, at *4 (S.D. Fla. Oct. 12, 2020)

(recommending denial of sanctions after finding technical difficulties at a deposition provided

substantial justification).

"Where . . . a party seeks to enforce Rule 37's sanctions, '[t]he burden of establishing that

a failure to disclose was substantially justified or harmless rests on the nondisclosing party.'"

*McBride*, 2020 U.S. Dist. LEXIS 87343, at *6.  "In addressing this issue, reviewing courts consider the nondisclosing party's explanation for the failure, the importance of the information, and whether the opposing party is prejudiced by the discovery violation." *Id.* at *6.

## IV.    ARGUMENT

### A.    Sanctions Are Unwarranted Here Because Sisvel Substantially Complied with the Court's Order

The first step in determining whether a party should be sanctioned for failure to comply with a Court order pursuant to Federal Rule of Civil Procedure 37(b)(2)(C) is, of course, determining whether that party actually failed to comply with the order it is accused of violating. *See PDVSA*, 2019 U.S. Dist. LEXIS 22872, at *28.  Here, the Order was narrowly tailored (*see supra* Part II.B), and Sisvel substantially complied with the Order by promptly conducting a diligent search for the relevant documents and producing them in the stated time frame to the best of its ability.  Thus, sanctions are inappropriate.

### 1.    Despite Challenges Sisvel Noted on the Record, Sisvel's May 2021 Production Was Only Slightly Delayed, and Sisvel Promptly Notified HMD of the Delay Before It Occurred

The Court's Order required Sisvel to produce, among other things, foreign litigation materials subject to protective orders and confidentiality agreements, as well as approximately a quarter of Sisvel's total communications related to a significant portion of its business.  Overall, Sisvel produced ███████████████████████████ from multiple sources in May 2021— and Sisvel accomplished this barely one month from the Order.  Indeed, as explained at the April 20, 2021 hearing, Sisvel knew that procuring and producing foreign litigation materials subject to protective orders and confidentiality agreements would be challenging.  (April Transcript at 33:14-21.)  Yet Sisvel worked diligently to obtain and produce this discovery as ordered, starting

just after the April 20, 2021 hearing.  Despite Sisvel's best efforts, however, these foreign

materials did not begin arriving until the afternoon of May 17, 2021.

Within hours of receiving the foreign materials and assessing the remaining time needed

to process them, Sisvel's outside counsel alerted HMD of a possible delay in production.  (ECF

No. 117-14.)  Sisvel continued to work diligently and began the production process before

midnight on May 17, 2021, with HMD receiving the first of three production batches 34 minutes

after midnight.  (ECF No. 117-15 at 2.)  HMD received the last batch less than 29 hours after the

deadline.  (*Id.* at 4.)

Nothing in this string of events constitutes a meaningful "violation" of the Court's Order,

and HMD can point to zero legitimate prejudice for this slight delay in production.

> **2.     Sisvel's Amended Objections and Responses to HMD's Third Set of
> RFPs in May 2021 Complied with the Order**

HMD asserts that Sisvel failed to comply with the Order because Sisvel served its

Amended Objections and Responses to HMD's Third Set of RFPs after May 17, 2021.  (ECF

No. 117 at 5.)  The Order required that Sisvel supplement its responses but did not require that

Sisvel do so by a certain date.  (*See* ECF No. 78 at 1.)  The parties conferred on May 21, 2021,

discussing, among other things, the manner in which Sisvel would amend its Objections and

Responses.  Sisvel supplemented its responses that same day, in a manner comporting with the

parties' agreement.  (ECF No. 117-21 at 2; ECF No. 117-17.)  To argue under these

circumstances that Sisvel violated the Court's Order by serving on May 21 ignores the Court's

own Order and the factual record.

**B.      Documents Produced in August Were Either Outside the Scope of the Order or Any Delay Was Substantially Justified, and the Circumstances Weigh Against Awarding Sanctions**

Sisvel produced a small number of additional documents in August to resolve additional complaints asserted by HMD.  The August 2021 production falls into four categories, each addressed in turn below.  In summary, most of these documents represent no violation to the Order whatsoever, because they were outside the scope of what the Court ordered to be produced.  Indeed, only a handful of these documents are even arguably related to the categories of documents addressed in the Court's Order.

For other categories of documents, any alleged violation "was substantially justified or other circumstances make an award of expenses unjust."  *See* FED. R. CIV. P. 37(b)(2)(C); *see also PDVSA*, 2019 U.S. Dist. LEXIS 22872, at *28.  The total August production comprised only ▮▮▮ documents out of an Ordered production of ▮▮▮▮▮▮▮.  As set forth with respect to each category of documents below, nothing about Sisvel's August 2021 production justifies imposing sanctions.

**1.      Supplemental Information on Payments That Sisvel Received ▮▮▮▮ ▮▮▮▮ Was Outside of the Court's Order**

HMD's Motion alleges that Sisvel's August 2021 production violated the Order because it "included documents to show revenue and licensing royalties received by Sisvel and related to the asserted patents (RFPs 76 and 78) . . . ."  (ECF No. 117 at 7.)  This allegation is false.

First, these documents are outside the scope of the Order because ***HMD itself had withdrawn its discovery challenge regarding RFPs 76 and 78 before the April 20, 2021 hearing***.  In mid-April 2021, Sisvel produced ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In response, HMD represented in its

Second Supplemental Notice of Hearing from April 19, 2021 that it believed Sisvel's production

in response to RFPs 76 and 78 to be complete:

> On Friday April 16, 2020, Sisvel amended its response to interrogatories nos. 17 and 18 and also claims to have produced documents responsive to request for production no. 76-79 pursuant to the parties' meet-and-confer discussions. Ex. A (April 16, 2021 Letter from Clayton to Palaiyanur); Ex. B (March 24, 2021 email chain regarding discovery disputes). **_HMD is in the process of reviewing Sisvel's production of documents but believes that Sisvel's amended discovery responses and production resolve discovery disputes concerning interrogatory no. 17 and requests for production 76, 78, and 79._** See Ex. C (April 19, 2021 Letter from Palaiyanur to Clayton) at 1; see also Ex. B.

(ECF No. 76 at 1-2.)  Because HMD had withdrawn its challenges as to RFPs 76, 78, and 79, the

Court did not address those RFPs either at the hearing or in its Order.  (ECF No. 78 at 1

("Plaintiffs Sisvel International S.A., 3G Licensing S.A., and Sisvel S.p.A. . . . shall supplement

their responses to Defendants' Third Set of Requests for Production **_Nos. 24, 29, 32, 34, 40, 54,_**

**_and 77 in accordance with the undersigned's rulings at the hearing_**.").)  HMD may have

decided in retrospect that it desired more documents in these categories, and Sisvel worked with

HMD to produce them to avoid further disputes, but their production represents *zero* violation of

the Court's Order.  If anything, HMD's inclusion of these documents in its current Motion raises

questions about its loose approach to the facts.

 Second, Sisvel's August 2021 production also included ███████████████

████████████████████████████████ pursuant to Sisvel's ongoing duty to supplement

its discovery responses.  (Ex. A.)  These documents were ██████████ the May 17, 2021

production deadline.  HMD's reliance on documents that █████████████ until after the

production deadline epitomizes its approach.  The Motion should be denied accordingly.

**2.      Sisvel Produced Balance Sheets for "Appropriate" Years in May 2021 and Later Produced Additional Balance Sheets as Requested**

HMD next asserts that Sisvel violated the Order because it produced "balance sheets responsive to RFP 54," which HMD suggests were subject to the May 2021 deadline.  (ECF No. 117 at 6-7.)  This assertion is also false.  Sisvel produced multiple balance sheets in May and then supplemented production with additional balance sheets in August 2021.  Both Sisvel's May and August production complied with the Order.

RFP 54 requests "[f]or each Plaintiff, documents and things sufficient to describe its financial position, including financial statements, profit and loss statements, balance sheets, or annual reports."  (ECF No. 117-5 at 10.)  At the April 2021 hearing, the Court declined to order such broad production.  Instead, the Court ordered that Sisvel produce "a balance sheet for whatever years are appropriate" and instructed HMD to ask for more materials if it "end[ed] up needing more."  (April Transcript at 46:24-47:4.)



In May 2021, Sisvel produced ██████████ balance sheets.  Specifically, Sisvel produced ████████████████████████████████████████████████████████ ████████████████████████████████████  With this context, HMD asserted that Sisvel had failed to produce any financial materials for ██████████  (ECF No. 117-18 at 3.)  But this is also wrong.  Information on ██████████ was incorporated into ████████████████ ████████████████████████ produced in May 2021.  (*See, e.g.*, Ex. B at 14 ████████████████ ██████████████████████████.)

In June 2021, HMD requested additional balance sheets.  (ECF No. 117-18 at 3.)  Sisvel's response from July 2021 asserted that Sisvel was compliant with the Order and offered to meet and confer if HMD required additional financial information.  (ECF 117-21 at 4.)  HMD failed to request any such meet-and-confer, yet in an effort to forestall any further disputes Sisvel



produced multiple additional balance sheets and financial statements ███████ ███████ (Ex. C) and ███████ ███████ (Ex. D).  Now HMD seeks to penalize Sisvel for its good faith efforts to be comprehensive, which should be rejected.  Overall, Sisvel complied with the Order and its discovery obligations as to this category of documents.  It was HMD that failed to adequately review the production it already received, and failed to adequately engage with Sisvel on any follow-up issues as Ordered by the Court.

### 3. Two NDA Drafts Produced in May 2021 Were Inadvertently Omitted from That Production

HMD asserts that Sisvel violated the Order because its August 2021 "production also included attachments to non-privileged emails with third parties (RFPs 32 and 40)." (ECF No. 117 at 7.)  In reality, what HMD is referring to here are just *two draft NDAs* that were inadvertently marked as privileged during May 2021 production and withheld on that basis. (Exs. E & F.)  Both NDAs were between Sisvel entities ███████ and were part of two email chains that were produced in the May production.

After HMD alerted Sisvel that those particular e-mail attachments were missing, Sisvel promptly investigated and produced them, explaining that the omission had been purely inadvertent.  (*See* ECF No. 117-18 at 3; ECF No. 117-21 at 4; ECF No. 117-23 at 2.)  Notably, these two draft NDAs are of zero relevance to the case, and as set forth below HMD suffered no prejudice from this inadvertent oversight.

### 4. Proof of Payment to ███████ in August 2021 Was Inadvertently Omitted from the May Production

HMD asserts that Sisvel violated the Order because Sisvel produced "documents to show the payments that Sisvel made to acquire the asserted patents (RFP 77)" in August 2021.  (ECF No. 117 at 7.)  To the extent that HMD intimates that it had ***no information*** on the financial

arrangements between Sisvel and ████████████████████████████████████
████████████████ prior to August 2021, that suggestion is again false.  Sisvel had produced

relevant licenses and acquisition documents prior to the April 2021 hearing.  (April Transcript at

48:7-11.)

Sisvel also explained at the April 20, 2021 hearing that its payments to its patent owner

partners were sometimes complex, ████████████████████████████████████████

██████████████████████ :

> Your Honor, in many cases these companies get paid not just on, certainly not just
> on the patents. They get paid on the patent portfolios, but they also get paid on other
> portfolios as well. So while they may have ownership rights and payments on one
> patent out of a thousand that are being licensed, it is not as simple as to say that a
> particular value can be attributable to a particular patent or a patent portfolio for
> that matter, as there are multiple portfolios.

(*Id.* at 48:12-19.)  The Court questioned the relevance of information HMD was seeking and

concluded that there was no "easy answer" to RFP 77.  (*Id.* at 50:9-17 ("***I don't know what the***

***easy answer for No. 77 is, to be honest***.").

In June 2021, HMD requested proof of payment for the asserted patents.  (ECF No. 117-

18 at 3.)  Sisvel's letter from July 2021 shows that Sisvel's counsel believed it had already

produced such information but had asked for an update from Sisvel.  (ECF No. 117-21 at 4 ("We

have produced this information in the past and have asked if there is an update to produce.").)

After learning that certain documents had not been identified for collection in the May

production (again, inadvertently), Sisvel produced additional documents in August.  These

included ████████████████████████████████████████████████████████████

████████████████████████████████████ and Sisvel's bank account statements showing

various outgoing transfers.  (*See, e.g.*, Ex. G ████████████████████████████████

████████████████ ; Ex. H ██████████████████████████████████  Many of these

documents had been inadvertently omitted because of how they are labelled.  (*See* Muus Decl. at

¶ 9.)  For example, legends on some quarterly royalty invoices reflect ███████████████

████████████████████████████, rather than "patent acquisition" payments.  As

with the NDA drafts, HMD was not prejudiced whatsoever, as set forth below.

### 5.       HMD Suffered No Prejudice from Inadvertent Failure to Produce Draft NDAs and Proof of Payment in May 2021

HMD mistakenly asserts that a defendant need not show prejudice to prevail on its

Motion, relying on a single case from the Eastern District of New York.  (ECF 117 at 8.)  First,

that case is clearly distinguishable the facts here.  *Sentry* involved "woefully inadequate" initial

production by the defendants and four court orders compelling production on the pain of

sanctions.  *Sentry Ins. A Mut. Co. v. Brand Mgmt.*, 295 F.R.D. 1, 2-4 (E.D.N.Y. 2013).  The court

expressly found that the defendants acted in bad faith, *id.* at 3, 4, and that even after the fourth

order the defendants' discovery affidavit "was replete with inconsistencies, repeated

misrepresentations, and dissembling," *id.* at 4.  The defendants provided 100,000 pages of

documents months after representing that production was complete, and more than 200 *boxes* of

additional documents after the plaintiff pressed anew for sanctions.  *Id.* at 4.  Those facts stand in

stark contrast to Sisvel's good faith actions and production here.

Second, under precedent from courts in *this* District, in determining whether to impose

sanctions under Fed. R. Civ. P. 37, prejudice is a factor the Court should consider.  "[R]eviewing

courts consider the nondisclosing party's explanation for the failure, the importance of the

information, ***and whether the opposing party is prejudiced by the discovery violation***."

*McBride*, 2020 U.S. Dist. LEXIS 87343, at *6.

Here, many of the documents Sisvel produced were outside the Court's Order.  As to

those within the Order, HMD cannot legitimately show that it was prejudiced.  The unsigned

NDA drafts have no relevance to this case, and Sisvel produced the e-mails to which these NDAs were attached.  Those e-mail chains showed how the negotiations between the Sisvel entities and ███████████ progressed.

HMD's receipt of these two particular drafts in August offers no plausible argument for prejudice.  Indeed, HMD does not attempt to identify a single issue in this case that would be impacted by any language in these draft NDAs.  This underscores the fact that HMD is not an aggrieved party that is earnestly seeking documents important to its case, but instead a calculated litigant seeking to use the tools of discovery to gain tactical advantage.

Regarding proof of payment, the Court summed up HMD's position as the "trust but []
verify mantra[.]"  (April Transcript at 51:16-17.)  The reason the Court used this language is because HMD already had the underlying agreements supporting those payments even before the April 20, 2021 hearing.  (*Id.* at 50:3-8.  *See also id.* at 49:25 to 50:2.)  HMD admitted that it requested the supporting information because it did not trust Sisvel's representations that it was making payments as required by its agreements.

HMD's claim to prejudice here rests on the puzzling assertion that its damages expert had drafted parts of his expert report without the benefit of Sisvel's August 2021 production, and will have to revise his report because he apparently assumed—without any supporting evidence—that Sisvel was not complying with its business obligations under the applicable agreements.  (ECF No. 117 at 15; ECF No. 117-1 at 4, ¶ 20.)  But that is not Sisvel's fault.  The Court has granted HMD's motion to stay all pre-trial deadlines, other than claim construction deadlines, until a claim construction order is issued, with that motion to be revisited in December 2021.  (ECF No. 116.)  Thus, HMD cannot even claim that it was under time pressure to meet any deadline for its damages report.  Moreover, HMD had substantive information on Sisvel's payments but ***chose***

not to use it in favor of its unfounded assumptions.  Indeed, the fact that  HMD's damages expert chose to ignore the factual evidence of record in favor of unfounded assumptions generated by HMD's lawyers raises questions about the entire process here.

HMD also claims that it conducted "repeated and unnecessary reviews of Sisvel's production—sometimes on a page by page basis[.]" (*Id.* at 15.)  But, as discussed above, HMD missed key documents in Sisvel's production, necessitating Sisvel to direct HMD to those documents in its responses to HMD's correspondence and in this opposition to the Motion.  (*See generally* ECF No. 117-21; *see also supra* Part IV.B.2.)  HMD itself demanded the production of ▮▮▮▮▮ of marginally relevant documents, and it should not be able to complain about having to review them.  Any prejudice was caused by HMD's failure to sufficiently review Sisvel's materials, not Sisvel's failure to provide them.

## V.  CONCLUSION

For these reasons, HMD's Motion should be denied.

<SIGNATURES ON NEXT PAGE>

Dated:  October 21, 2021

Respectfully submitted,

*/s/ Jorge Espinosa*
Jorge Espinosa, Esq.
Florida Bar No: 779032
jorge.espinosa@gray-robinson.com
Francesca Russo, Esq.
francesca.russo@gray-robinson.com
Robert R. Jimenez, Esq.
robert.jimenez@gray-robinson.com
**GRAY | ROBINSON, P.A.**
333 S.E. 2nd Ave., Suite 300
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-416-6887

Timothy Devlin (Pro hac vice)
tdevlin@devlinlawfirm.com
Neil Benchell, Esq. (Pro hac vice)
nbenchell@devlinlawfirm.com
Stephanie Berger, Esq. (Pro hac vice)
Sberger@devlinlawfirm.com
**DEVLIN LAW FIRM LLC**
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Plaintiffs*
*Sisvel International S.A.,*
*3G Licensing S.A., and Sisvel S.p.A*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of October 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ *Jorge Espinosa*
Jorge Espinosa, Esq.
